IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

**EDNER MICHEL,**

    Petitioner,

vs.                                    Case Number 4:06cv37-MP/WCS

**ALBERTO GONZALES,
MICHAEL CHERTOFF,
MICHAEL ROZOS,
DAVID HARVEY, and
DEPARTMENT OF
HOMELAND SECURITY**

    Respondents.

_____/

## REPORT AND RECOMMENDATION

This case was initiated on January 23, 2006, when Petitioner (who was proceeding *pro se* at the time) filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Doc. 1. Respondents filed a motion to dismiss, doc. 18, on June 16, 2006, containing numerous exhibits.[1] Petitioner was reminded of his opportunity to file

---

[1] Unlike a traditional civil case, the Court is permitted to review documents outside the pleadings and consider the record without a hearing and without construing the motion to dismiss as a motion for summary judgment. Doing so is consistent with the purpose of Habeas Rule 8(a), intended to permit disposal of a habeas petition "as

a response to the motion to dismiss, doc. 19, and shortly thereafter, a notice of appearance was entered, doc. 23, and Petitioner (through counsel) has filed a response to the motion to dismiss, doc. 24.

**Claim of the § 2241 petition**

Petitioner's petition for a writ of habeas corpus seeks release from what is claimed to be an indefinite period of custody. Petitioner does not challenge the final order of removal; rather, he contends that his native country of Haiti "has refused to issue travel documents" and, thus, ICE will not be able to deport him in the "reasonably foreseeable future." Doc. 1, pp. 1-2. Petitioner alleges he has been held beyond the presumptively reasonable period of detention as established by Zadvydas v. Davis, 533 U.S. 678 (2001), and asserts his entitlement to release.

**Background Facts**

Petitioner is a native of Haiti, who arrived in the United States in Miami, Florida on July 14, 1982. Doc. 18, exhibits A, C. Petitioner became a legal permanent resident on November 10, 1987, effective as of January 1, 1982. Doc. 18, ex. A. Petitioner has not become a naturalized citizen.

On March 3, 1999, following a jury trial, Petitioner was convicted of Principle [sic, Principal] to Vehicle Homicide, a violation of F<small>LA</small>. S<small>TAT</small>. § 782.07, and a third degree felony.[2] Doc. 18, ex. B. He was sentenced to a term of fifteen years and five months in

---

justice shall require," and review the record without holding an evidentiary hearing. McBride v. Sharpe, 25 F.3d 962, 970 (11th Cir. 1994).

[2] Petitioner had been charged by Information with the second degree felony of Principal to Manslaughter. Doc. 18, ex. B, p. 8.

the Florida Department of Corrections.  *Id.*  The circumstances of this offense, as alleged in the Information, were that Petitioner purchased a truck which "lacked statutorily required rear lighting or illumination."  *Id.*, at 8.[3]  During the pre-dawn hours of May 13, 1996, Petitioner was a passenger in his truck while another person was driving it below the posted minimum speed limit on State Road 9.  *Id.*  A vehicle drove into the rear of Petitioner's truck and the driver of that vehicle died instantly in the collision.  *Id.*  Petitioner has no other criminal history.  Doc. 18, ex. F.

On February 8, 2000, Petitioner received a notice charging him with being removable (deportable) due to his conviction for the Offense of Principle to Vehicular Homicide.  Doc. 18, ex. D.  Pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act, this conviction constitutes an aggravated felony and subjects Petitioner to removal.  *Id.*  Petitioner was ordered deportable on February 7, 2001, to be returned to his native country of Haiti.  Doc. 18, ex. E.  The Board of Immigration Appeals dismissed Petitioner's appeal on July 17, 2001.  Doc. 18, ex. F.  Petitioner attempted to

---

[3] The Fifth District Court of Appeal affirmed Petitioner's conviction, and in that opinion, noted that the "truck lacked rear tail lights, reflective devices, and a rear bumper."  Doc. 18, ex. B, p. 14 (Michel v. State, 752 So.2d 6 (Fla. 5th DCA 2000)).  The truck "also had exposed frame rails, which hung over the back of the truck."  *Id.*  The accident happened on I-95 at approximately 5:20 a.m., with Petitioner's truck traveling at about 22-24 miles per hour when the victim's vehicle, traveling at a speed of 65-70 miles per house, struck the rear-end of Petitioner's truck.  The victim's car drove "up and under" Petitioner s truck, "the truck's steel frame rails protruded into the victim's car and the victim was instantly killed."  *Id.*  The court noted that Petitioner and his driver had been stopped at about 6 p.m. the night before on I-95, warned about the condition of the truck, and ordered to exit and not reenter the "highway" until the problems were fixed.  *Id.*  The probable cause affidavit stated that as a part of the earlier warning, Petitioner was also told to use U.S. 1 only during daylight hours.  *Id.*, p. 10.  The affidavit refers to State Road 9, which also must be Interstate 95.  The affidavit also states that Petitioner's truck was in the outside lane on Interstate 95 when it was struck.  *Id.*

appeal the Board's decision to the Eleventh Circuit Court of Appeals, but the petition for review was dismissed as untimely.  Doc. 18, ex. G.

Petitioner was released from the Florida Department of Corrections on July 20, 2005, and taken into custody of ICE since that time awaiting removal.  Doc. 25, pp. 3, 7. Petitioner has been in custody a little more than one year.

On February 1, 2005, March 1, 2005, August 26, 2005, September 30, 2005, and January 3, 2006, ICE made efforts to obtain travel documents for Petitioner from the Consulate of Haiti.  Doc. 18, p. 3.  The first two of those efforts were facsimile requests sent to the Haitian Consulate, requesting "an update of the status of the following travel document requests."  Doc. 18, ex. I, pp. 2-3.  Petitioner's name was included in a list of other persons.  *Id.*  The August 26, 2005, correspondence was a letter to the Consulate of Haiti which was "a formal request for the issuance of an emergency travel document on behalf of Mr. Michel who is a native and citizen of Haiti."  *Id.*, at 4.  That letter also stated that attached were "supporting documents which should help to facilitate ths issuance of a travel document."  *Id.*[4]  The September 30, 2005, letter was a "follow-up request for an emergency travel document" for Petitioner, and referenced the August 26, 2005, request.  *Id.*, at 5.  It further stated that Petitioner[5] would "be scheduled to depart the United States upon receipt of a travel document" and went on to request a "prompt response."  *Id.*  The January 3, 2006, correspondence was another facsimile

---

[4] It is unknown what was attached to that letter.

[5] The letter actually contains a typographical error stating that "Mr. JEAN" would be scheduled to depart upon receipt of travel documents, but the name referenced in other places in the document is Petitioner Edner Michel.  Doc. 18, ex. I, p. 5.

request sent to the Haitian Consulate, requesting "an update of the status of the following travel document requests." Doc. 18, ex. I, p. 6. Again, Petitioner's name was included on the list. *Id.*

Written letters were sent to Petitioner on July 28, 2005, January 12, 2006, and April 13, 2006, to have Petitioner assist in his removal. *Id.* Doc. 18, ex. J. The April 13, 2006, letter to Petitioner specifically advised that on July 28, 2005, he had been served a I-229 form instructing Petitioner "to make timely application in good faith for [his] passport." *Id.*, at 2. The letter noted that failure to provide his passport was considered "a direct attempt to hamper [his] removal." *Id.*

Respondents have provided a copy of the Instruction Sheet which contains a list of documents and information which is provided to detainees and indicates what each person is to provide so as to assist the United States in obtaining travel documents. Doc. 18, ex. J, p. 3. The Instruction Sheet, which was signed by Petitioner on July 28, 2005, does not have any box checked indicating items which Petitioner was required to submit. *Id.* Notably the first item listed on that document is to "submit passports." *Id.* There is no checkmark by that box, although unlike each of the other items which are listed with a box to the left which would presumably be checked, this item has two boxes, neither of which have a checkmark. *Id.*

A second Instruction Sheet was provided to Petitioner and dated January 12, 2006. Doc. 18, ex. J, p. 5. This document has several items checked for Petitioner to provide but, ironically, the box requesting Petitioner to submit a passport is not marked. *Id.* There are a number of items checked, however, and Petitioner was requested to:

>Apply for a travel document/passport from your embassy or consulate, or directly from your government in your native country, or any other embassy or consulate of your native country in another country.
>
>Comply with all instructions from all embassies or consulates requiring completion of documentation for issuance of a travel document.
>
>Provide names and addresses of family and friends residing in the Untied States and request that they contact your embassy or consulate in the United States, in order to facilitate the issuance of a travel document.
>
>Provide names and addresses of family and friends residing in your country of citizenship and request family and friends residing abroad contact your government in reference to issuing a travel document.
>
>Provide INS with written copies of requests to embassies or consulates requesting issuance of a travel document.
>
>Provide INS with written copies of responses from embassies or consulates regarding your requests.

*Id.*, at 5.

Yet a third Instruction Sheet has been presented which was provided to Petitioner on April 13, 2006. Doc. 18, ex. J, p. 7. This latest document, given to Petitioner after the filing of this § 2241 petition, checks every box on the page, including the instruction to "submit passports," indicating much more is now needed from Petitioner as compared to what was previously given to Petitioner back in July of 2005. There is no evidence that the Haitian Consulate responded to any of the requests for travel documents that Respondents sent to Haiti.

**Legal analysis**

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States.  8 U.S.C. § 1231(a)(1)(A).  However, the removal period "shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).  During the "removal period" an alien must be detained. 8 U.S.C. § 1231(a)(2).  After the removal period, the government may detain the alien or release him subject to conditions of release.  8 U.S.C. § 1231(a)(6).

In <u>Zadvydas v. Davis</u>, 533 U.S. 678, 689, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the United States Supreme Court considered a challenge to 8 U.S.C. § 1231(a)(6) and was asked to decide whether the statute authorized indefinite detention of a removable alien.  The Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States."  *Id.*, at 689, 121 S. Ct. at 2498.  The Court interpreted the statute to avoid constitutional threat by concluding that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute."  *Id.,* at 699, 121 S.Ct. at 2503.  For the sake of uniform administration by the federal courts, the <u>Zadvydas</u> Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months;

after that, the alien is eligible for conditional release if he can demonstrate that there is 'no significant likelihood of removal in the reasonably foreseeable future.' " Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005), *quoting* Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505.

In Clark v. Martinez, *supra*, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[6]  The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien. Clark, 543 U.S. at 386, 125 S.Ct. at 727.  Thus, it held that the 6-month presumptive detention period prescribed in Zadvydas should be applicable.  *Id.*  The combination of opinions from Clark and Zadvydas controls this case: an alien cannot be detained indefinitely and when an alien shows that he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005)(relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").

---

[6] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."  8 U.S.C. § 1231(a)(6), *quoted in* Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005).

Zadvydas established a burden-shifting analysis to review these claims. After the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Id.* The Court also noted:

> And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*, at 701, 121 S.Ct. at 2505.

Here, Petitioner has made a *prima facie* case. Petitioner alleges that he has been held in custody longer than six months, that the Haitian government is "in turmoil and unstable" and that the government "refuses to accept certain deportees with criminal convictions." Doc. 1, p. 9. Plaintiff has alleged sufficient facts to show that there is no significant likelihood of his removal in the reasonably foreseeable future. Thus, the burden is on the Government to show that Petitioner's removal is reasonably foreseeable and can be carried out within a reasonable period of time.

Respondents point out that this petition was filed just "shortly after the expiration of" the presumptive period of removal and Petitioner can be removed. Doc. 18, at 7. Additionally, Respondents contend that Petitioner has not met his burden of providing

"good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*, at 8, *citing* Zadvydas, *supra*.

It is further argued that Petitioner is required to assist in efforts to remove him, but that Petitioner has not made "meaningful efforts to assist in his removal . . . ." *Id.*, at 7-8. Specifically, Respondents state that Petitioner has failed to "apply to the Consulate of Haiti for travel documents or to provide his passport" which "renders disingenuous his claim that there is no likelihood of removal." *Id.*, at 8. Finally, Respondents contend that Petitioner's detention is lawful. *Id.,* at 8-9.

Petitioner, with the assistance of counsel, has now filed a response to the motion to dismiss. Doc. 24. Attached to the response are many of the same exhibits provided by Respondent. By and large there is no additional evidence presented by Petitioner, with the exception of a newspaper article concerning elections in Haiti (to show that the country is in turmoil). Doc. 24, ex. F. That document is not a part of the record and, absent an evidentiary hearing, will not be considered in this case.

As to the arguments raised by Respondents, Petitioner asserts that he has now been in Respondents' custody "for approximately one year with no end in sight for his removal to Haiti." Doc. 24, p. 3. Petitioner states that because he has been held twice as long as what is presumptively reasonable for removal, it is less likely that his removal is reasonably foreseeable. *Id.* Indeed, Petitioner points out that the first request for travel documents was in February of 2005, nearly a year and a half ago. *Id.*, at 4. Petitioner notes that Respondents have "not served up any specifics or detail on what the government is relying on to contend that it is reasonably foreseeable that Petitioner

will be removed." *Id.*, at 3-4. Because no facts have been presented by Respondents to show why it is significantly likely that Petitioner will be removed in the foreseeable future, Petitioner argues that it is apparent "that the government does not know when" Petitioner could be removed, if he is even removed at all." *Id.*, at 3-4.

Petitioner argues that two specific allegations from the initial § 2241 petition have not been rebutted by the Respondents. *Id.*, at 4. First, Petitioner asserts that the Haitian government is in turmoil and unstable and, second, because the "Haitian government refuses to accept certain deportees with criminal convictions," it is not reasonably foreseeable that Petitioner will be deported to Haiti. *See* doc. 1, p. 9.

Furthermore, Petitioner responds to Respondents' argument that Petitioner has not cooperated with the removal process by pointing out that he has not taken any actions which would hamper or hinder his removal. Petitioner contends that "it is the Haitian government that has not cooperated in the removal process . . . ." Doc. 24, p. 6. Petitioner also argues that the statute which requires him to assist in his removal is more in the nature of a criminal provision, and "not consistent with the case precedent in *Zadvydas* which is controlling . . . ." Doc. 24, p. 5.

Moreover, Petitioner represents that he has been incarcerated since 1999 and "has been unable to locate his passport." *Id.* It is argued that there is no evidence in this case that Petitioner "has intentionally withheld his passport," or that he even had a passport while incarcerated. Rather, it is more reasonable to accept that Petitioner simply "does not have his passport." *Id.* Petitioner further asserts that even if he could

locate his passport, it would surely be expired and, thus, there would again be "the need to request travel documents from Haiti which brings the issue back full circle." *Id.*

Petitioner acknowledges that he has not written a letter to the Haitian government requesting travel documents. Doc. 24, p. 6. However, he argues that he has not been presented with a prepared letter to sign, nor has he refused to sign any such letter. *Id.* "More important, the United States government has sent and requested travel documents for the Petitioner on numerous occasions, with no success." *Id.*, at 6. "It is highly unlikely that the Petitioner, in custody, by writing to the Haitian consulate requesting travel documents would have been more successful in obtaining them, than the United States government." *Id.* "Certainly, the United States government has more resources and power to obtain these documents from Haiti, than petitioner who is in custody and unable to speak to them on the telephone to follow-up or go in person." *Id.*, at 6-7.

Thus, Petitioner contends that his failure to write a letter to the Haitian consulate is immaterial to the fact that requests from the United States government have not been successful. Moreover, Petitioner argues that Respondents have not "offered any tangible evidence to suggest that his removal is reasonably foreseeable." *Id.*, at 7.

The timing of the habeas petition is not a basis for denying the petition. Though Petitioner quickly filed the petition after six months, Petitioner now has been held in detention for a year.

The argument that Petitioner has not met his burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable

future" is not persuasive. As noted above, Petitioner made this showing when he alleged that Haiti refuses to accept criminal deportees and the government of Haiti is in turmoil. His argument is supported by the fact that it has been nearly a year and a half since the United States government began requesting travel documents and there has apparently been no response. Having met that burden, it is now Respondents' burden to submit "evidence sufficient to rebut" Petitioner's showing.

Respondents have not met their burden. Respondents have not presented any *evidence* tending to show that removal is likely or in the near future. There is simply no indication that any of the requests for travel documents have been answered, or that the Haitian government is requesting additional information prior to issuing the travel documents. The Court is left simply with evidence that numerous requests appear to have gone without response. With that history, it is more reasonable to conclude that Haiti will not send the needed travel documents in the near future.

Respondents have made the broad assertion that Petitioner has not made "meaningful efforts" to assist in his removal, yet they do not point to any documents beyond a passport that Petitioner has not provided. Petitioner responds that he has been in prison since 1999, and does not know where his passport is, and even if he could produce it, it would be expired and travel documents and a renewed Haitian passport would have to be requested anyway. Petitioner is correct that his failure to produce his old passport is insufficient to conclude that he has hampered his removal.

Additionally, it is noted that the first Instruction Sheet provided to Petitioner on July 28, 2005, did not have a single item checked indicating Petitioner needed to

produce documents.  Furthermore, the second Instruction Sheet, served on Petitioner on January 12, 2006, still did not advise Petitioner he needed to submit a passport.  It was only after this petition was filed that Petitioner was directed to submit a passport.  Indeed, that third Instruction Sheet, dated April of 2006, had every single item on the list checked.  By that point, however, Petitioner had already been in custody some nine months.

Petitioner's period of post-removal has now passed the one year mark.  The "reasonably foreseeable future" has begun to shrink.  After a year, it is either time for the Government to affirmatively demonstrate with *some evidence* that Petitioner's removal is relatively imminent, or it is time to release Petitioner.  That demonstration has not been made.  Where removal is not foreseeable, then continued detention is unreasonable, is not authorized by statute, and is not constitutionally permissible.  *See* Zadvydas, 533 U.S. at 690 and 699-700, 121 S.Ct. at 2499 and 2504.  The relevant statute provides that if an alien "is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General."  8 U.S.C. § 1231(a)(3).  Such regulations are to require the alien to: "(A) to appear before an immigration officer periodically for identification; (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government; (C) to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and (D) to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien."  8 U.S.C.

§ 1231(a)(3). Inadmissible or criminal aliens must be subject to terms of supervision. 8 U.S.C. § 1231(a)(6). Since the Government has not shown that Petitioner will be removed in the reasonably foreseeable future, and because his continued detention is no longer authorized by statute nor permitted by the Due Process Clause of the United States Constitution, the § 2241 petition should be granted.

Accordingly, it is **RECOMMENDED** that Petitioner Edner Michel's petition for a writ of habeas corpus, doc. 1, filed pursuant to 28 U.S.C. § 2241 be **GRANTED** and Respondents **ORDERED** to release Petitioner from custody under such terms and conditions deemed necessary to keep Respondents advised of Petitioner's whereabouts pending his removal and in compliance with the requirements of 8 U.S.C. § 1231(a)(3)..

**IN CHAMBERS** at Tallahassee, Florida, on July 27, 2006.

> s/ William C. Sherrill, Jr.
> **WILLIAM C. SHERRILL, JR.**
> **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**